776 P.2d 791

**Richard OHLMAIER, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Arizona Feeds, Respondent Employer,**

**Fireman's Fund, Respondent Carrier.**

No. CV–88–0308–PR.

Supreme Court of Arizona, En Banc.

July 11, 1989.

---

Tretschok, McNamara & Clymer by Dale D. Tretschok, Tucson, for petitioner.

Catherine A. Fuller, Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Rabinovitz & Associates, P.C. by Bernard I. Rabinovitz, Tucson, for respondent Employer/Carrier.

CLABORNE, Judge.

Richard Ohlmaier, the petitioner employee, seeks review of an opinion of the court of appeals affirming an industrial commission award that found no permanent physical impairment as the result of an industrial injury. We must determine whether substantial justice, as set forth in the Workmen's Compensation Act, is accomplished when one administrative law judge hears medical testimony from one physician and then merely reviews a transcript of testimony given by two other physicians before two other administrative law judges in order to make an award concerning permanent physical disability. We have jurisdiction pursuant to the Arizona Constitution, art. 6, § 5(3) and A.R.S. §§ 12–120.24 and 23–948.

## FACTUAL HISTORY

Richard Ohlmaier (Ohlmaier) sustained a low back injury in October 1983 while in the course of his employment. Respondent insurance carrier accepted Ohlmaier's compensation claim and terminated his benefits without permanent disability effective September 1985. Ohlmaier timely protested and hearings were set before an industrial commission administrative law judge. Administrative Law Judge Kurth presided over the first hearing in which the claimant and one physician testified. That hearing was in May 1986. The second hearing was conducted by a different administrative law judge in July 1986. The third hearing was

conducted by a third administrative law judge in September 1986. The second and third hearings consisted only of the testimony of a physician at each hearing.

The testimony of the three physicians conflicted. Although it appears the truthfulness of the physicians' testimony was unquestioned, their medical opinions concerning whether the medical condition of claimant was employment related were in conflict. Administrative Law Judge Kurth reviewed the transcripts, resolved the medical conflict, and held that "the applicant does not have a permanent impairment related to the industrial injury in question."

Before the first hearing, the petitioner's attorney objected to the hearings being conducted by three different administrative law judges. Petitioner offered to delay the hearings until Kurth or any other administrative law judge could hear the testimony of all the physicians. The objection was not honored. Objections by petitioner were again made at each of the other two hearings before the other two judges.

The petitioner sought review pursuant to A.R.S. §§ 23–943(H) and 23–951. The court of appeals affirmed the award. The court of appeals ruled that "substantial justice" as set forth in A.R.S. § 23–941(F) is achieved when the deciding administrative law judge does not observe the testimony of conflicting expert witnesses so long as the truthfulness of these witnesses is not critical to resolution. The court of appeals also held that the evidence taken by the three administrative law judges supported the award by Judge Kurth.

It is our belief that the court of appeals mischaracterized the problem. The court of appeals distinguished the facts in this case from *Adams v. Indus. Comm'n,* 147 Ariz. 418, 710 P.2d 1073 (App.1985) by commenting:

In contrast to *Adams,* the issue here does not involve the credibility of a testifying claimant and whether an injury took place. Rather, the unobserved testimony in this case involves conflicting medical opinions about whether an undisputed injury caused a permanent disability.

*Ohlmaier v. Indus. Comm'n,* 158 Ariz. 287, 291, 762 P.2d 574, 578 (App.1988). We believe the issue is broader. Not only is credibility a larger question than truthfulness, but also the quality of substantial justice demands a higher standard. The Workmen's Compensation Act contemplates standards for administering a vast and comprehensive program of industrial employee compensation. We also feel that once a judicial process is incorporated into such a system, that process must comport with substantial justice. When the administrative or managerial procedure ceases and the process of judicial fact finding occurs, then he who decides must hear.

Substantial justice certainly requires that one judge shall hear all conflicting evidence which may form the basis of a contested industrial award. Any evidence affecting a factual conclusion, whether appearance, demeanor, or the weight of one witness's testimony over another, should be heard by the one who is to decide the ultimate issues. Because we set aside the award on this basis, we do not reach the issue concerning whether the evidence found by Judge Kurth supports the award.

## BACKGROUND

Before addressing the specific issue before us, we will briefly review the purpose of the workmen's compensation legislation.

The workmen's compensation laws were designed to shift the burden of work-related accidents and disease from the individual employee to society. Justice Lockwood in his dissent in *Melendez v. Johns,* 51 Ariz. 331, 348, 76 P.2d 1163, 1180 (1938), with his usual clarity, said:

[U]nquestionably the fundamental reason for compensation laws is to take the burden of loss by injury incurred in and as a result of employment from the individual and place it upon the community as a whole ...

Therefore, employees covered by workmen's compensation acts can obtain compensation even though the employer is not at fault and despite a common law defense. However, the amount of recovery is strictly

governed by statute and rule. The benefits conferred are less than what might be awarded under traditional tort law. Both employer and employee gain and lose something by the shift to workmen's compensation. Our courts, in interpreting the Act, have consistently categorized the Act as remedial and the provisions of it "should be given a liberal construction, with a view of effectuating their evident purpose of placing the burden of injury and death upon industry." *Nicholson v. Indus. Comm'n*, 76 Ariz. 105, 108, 259 P.2d 547, 550 (1953).

Clearly the objective of modern workmen's compensation programs, including Arizona's, is to provide broad coverage for work-related injuries and diseases; substantial protection of interruption of workers' income; supplying sufficient medical care and rehabilitation services; and improving safety in the workplace. Davis, *Arizona Workers' Compensation* 8 (1980). In order to effectively deliver these objectives, Arizona provides a comprehensive system which is governed by constitution, statute and industrial commission rule. Ariz. Const. art. 18, § 8; A.R.S. §§ 23-101 to 1091 (1983).

Administrative law judges were placed into this system to hear contested claims by workers, the employer or the commission itself. An infinite variety of subjects ranging from employee coverage, the nature and extent of industrial injury, temporary or permanent loss of income, to temporary or permanent impairment of physical or mental faculties can be the basis of such a contested claim. This contested hearing process is governed by A.R.S. §§ 23-941, 23-943 and the administrative hearing rules of the commission. *See* Rules of Procedure for Workmen's Compensation Hearings Before the Industrial Commission of Arizona, R. 4-13-101 through 163.

In 1973, the Arizona legislature amended the method of adjudicating contested claims and provided the opportunity for review of an administrative law judge's decision. That review is by the same administrative law judge who heard the contested claim. A.R.S. § 23-943(H); *Koval v.*

*Indus. Comm'n*, 23 Ariz.App. 277, 532 P.2d 549 (1975). The award is then final. No longer does the commission itself review awards. *Id.* 23 Ariz.App. at 279, 532 P.2d at 551. To obtain relief from the award, the aggrieved party must petition the court of appeals for review. A.R.S. § 23-943(H).

## THE NATURE AND QUALITY OF A CONTESTED INDUSTRIAL INJURY CLAIM

With this background we now ask: What is the nature of the hearing allowed by the statute and what is the essential quality of that proceeding?

Although the process by which a claim is advanced in a workmen's compensation case may be different from the rules of procedure in superior court, both must observe the same fundamental principles of justice. *Travelers Ins. Co. v. Indus. Comm'n*, 18 Ariz.App. 28, 499 P.2d 759 (1972); *Mutual Benefit Health & Accident Ass'n v. Neale*, 43 Ariz. 532, 33 P.2d 604 (1934).

A claimant has an absolute right to have an opportunity to present his case fully and freely before an impartial tribunal, i.e., to have his day in court. *Salmi v. Indus. Comm'n*, 3 Ariz.App. 411, 415 P.2d 126 (1966); *Martin v. Indus. Comm'n*, 88 Ariz. 14, 352 P.2d 352 (1960). The impartiality of an administrative law judge is guarded by statute and rules just as assiduously as in superior court. A.R.S. § 23-941(I) and (J); Rule 10, Arizona Rules of Criminal Procedure; Rule 42(f), Arizona Rules of Civil Procedure.

The rules of procedure governing contested claims are not substantially different than in any other judicial forum. *See* Rules of Procedure for Workmen's Compensation Hearings Before the Industrial Commission of Arizona. The rules regarding preparation for and the conduct of a contested claim provide that: Depositions may be taken (R. 4-13-142); interrogatories may be used (R. 4-23-144); sanctions may be imposed for violation of procedural rules (R. 4-13-142, 145, 157); "interested" parties may be joined (R. 4-13-150); burden of proof may be evaluated (R. 4-13-

148); admissibility of certain types of evidence may be weighed (R. 4–13–141); witnesses may be excluded (R. 4–13–153); rules governing medical reports not in the commission files may be suspended (R. 4–13–155); and informal conferences may be conducted not unlike the superior court pretrial conference (R. 4–13–140(B)).

Each tribunal can admit hearsay. *Reynolds Metals Co. v. Indus. Comm'n,* 98 Ariz. 97, 402 P.2d 414 (1965) is the primary case dealing with hearsay in industrial commission litigation. Although later cases generalized about hearsay admissibility, the *Reynolds* court held that an award may be based on hearsay "of the kind on which reasonable men are accustomed to rely in serious affairs." *Id.* at 103, 402 P.2d at 418. *See Kennecott Copper Corp. v. Indus. Comm'n,* 4 Ariz.App. 327, 329, 420 P.2d 194, 196 (1966). A glance at the cases dealing with admission and reliance on hearsay in superior court reflects little difference. *See* Rules 803 and 804(b)(5), Arizona Rules of Evidence.

■ Clearly, the nature of a hearing before an administrative law judge deciding an issue of serious magnitude to both employee and employer is judicial and, like all judicial proceedings, its object is substantial justice. We now turn to the question of whether "substantial justice" can be obtained when one judge decides a case without hearing all of the evidence.

The function of a fact-finding judge or a jury is to receive and weigh evidence and reach a conclusion based upon that evidence. The majority of courts have held that a party has a right to a decision upon the facts of his case from a judge who hears the evidence, or a jury who hears the evidence if the case is tried before a jury.* One simply cannot be compelled to accept a decision from a judge or jury who has not heard the evidence. *Emerson Elec. Co. v. General Elec. Co.,* 846 F.2d 1324 (11th Cir.1988); *Paragon Group, Inc. v. Hoekse-*

*ma,* 475 So.2d 244 (Fla.App.1985); *Farner v. Farner,* 480 N.E.2d 251 (Ind.App.1985); *Tacoma Recycling, Inc. v. Capital Material Handling Co.,* 42 Wash.App. 439, 711 P.2d 388 (1985); *Matter of Death of Elwell,* 66 Haw. 598, 670 P.2d 822 (1983); *Commonwealth v. Davis,* 268 Pa.Super. 401, 408 A.2d 849 (1979); *Starke v. Village of Pewaukee,* 85 Wis.2d 272, 270 N.W.2d 219 (1978); *Michel v. Michel,* 31 A.D.2d 313, 297 N.Y.S.2d 250, 253 (1969); *David v. Goodman,* 114 Cal.App.2d 571, 250 P.2d 704 (1952); *McAllen v. Souza,* 24 Cal. App.2d 247, 74 P.2d 853 (1937); *Hughes v. Demund,* 96 Cal.App. 365, 274 P. 405 (1929); *In re Sullivan,* 143 Cal. 462, 77 P. 153, 155 (1904). *See also* Annotation, *Power of Successor or Substituted Judge, in Civil Case, to Render Decision or Enter Judgment on Testimony Heard by Predecessor,* 22 A.L.R.3d 922, 929–36 (1968).

The defendant's employer and carrier want us to distinguish between rights finally decided by an administrative law judge and rights finally decided by a jury or other judicial officer. Does not substantial justice require one jury to decide an award for a permanently injured plaintiff resulting from the negligence of another, and also require one administrative law judge to finally decide a permanent injury award to a victim of an industrial accident? We think there is no distinction either in logic or experience. It is important that the distinguishing characteristic between a board or hearing officer and a judicial officer be recognized. A judge renders a final judgment; a commission or hearing officer normally does not. *See Rosales v. Department of Labor and Industries,* 40 Wash. App. 712, 700 P.2d 748 (1985).

■ An administrative law judge is a fact finder and appellate courts are bound by those findings. *Atkinson v. Indus. Comm'n,* 26 Ariz.App. 6, 9, 545 P.2d 968, 971 (1976). *See also Malinski v. Indus. Comm'n,* 103 Ariz. 213, 216, 439 P.2d 485, 488 (1968). However, in disciplinary pro-

---

* There are several jurisdictions which take the opposite view; however, most deal with stipulations allowing successor judges to read the testimony. These are in the minority and are not the better reasoned cases. *See* Annotation, *Power of Successor or Substituted Judge, in Civil Case, to Render Decision or Enter Judgment on Testimony Heard by Predecessor,* 22 A.L.R.3d 922, 927–29, 937–39 (1968).

ceedings the supreme court is the judge of both fact and law. Therefore, members of the commission who do not hear the testimony at the evidentiary hearing, but review the transcribed testimony thereof, may vote nevertheless and no right has been violated. *See In the Matter of Ackel,* 155 Ariz. 34, 745 P.2d 92 (1987).

However, a new committee violates due process when it ignores the results of one fact finding committee in a disciplinary proceeding and forms to find the facts once again. As this court said:

> Although we describe disciplinary proceedings as nonpunitive, we realize that they are anything but from a respondent's standpoint. Surely traditional notions of fair play are offended by permitting the administrative tribunal having ultimate jurisdiction to require, without any apparent good cause, *cf.* Rule 48(c), that the matter be tried and retried. The Commission and this court give great weight to the factual findings of a committee, particularly when questions of credibility are involved. The committees have an independent, factfinding, credibility-weighing function which should be given deference. As we view the concept of due process, neither the Commission nor this court may transfer a case to a new committee because of unhappiness with the factual findings of a particular committee.

*In the Matter of Hoover,* 155 Ariz. 192, 196, 745 P.2d 939, 943 (1987) (citations omitted). *See Addison v. Review Board of Ind. Empl. Sec. Div.,* 397 N.E.2d 1037, 1039 (Ind.App.1979) (allowing one who has not heard the testimony to decide the merits of the claim denies a party of an essential element of the trial process). To allow three administrative law judges to hear only parts of a litigant's claim and have only one judge reach a decision violates procedural due process no less than having three judges hear the evidence and picking the decision one likes the best.

Finally, the function of substantial justice requires credibility resolution beyond the narrow question of truthfulness. The court in *Indiana Metal Products v. N.L.*

*R.B.,* 442 F.2d 46 (7th Cir.1971) defined credibility in this larger sense and said:

> The Board maintains that it is not bound by a credibility resolution where, as in the case of Bryant's testimony, the trial examiner made his determination not on the basis of the demeanor of the witness, but on an analysis of the testimony presented.

> While we do not quarrel with this as a general proposition where the facts are undisputed, we are not unmindful that definitions of credibility do not necessarily confine that concept to the narrow peg of truthfulness. It has been termed as "the quality or power of inspiring belief." Webster's Third New International Dictionary (1966). "Credibility involves more than demeanor. It apprehends the over-all evaluation of testimony in the light of its rationality or internal consistency and the manner in which it hangs together with other evidence." Evidence, to be worthy of credit, must not only proceed from a credible source, but must, in addition, be "credible" in itself, by which is meant that it shall be so natural, reasonable and probable in view of the transaction which it describes or to which it relates, as to make it easy to believe it. Credible testimony is that which meets the test of plausibility.

> Differentiating between credibility based upon demeanor and credibility based upon analysis of the evidence could well be a semantical exercise in conceptualism of gossamer calibre.

*Id.* at 51–2 (citations omitted).

The credit to be accorded any testimony involves anything which throws light on the accuracy, truthfulness, and sincerity of the witness. In order to give impartial and complete credence to evidence, the one who decides the issue should be the one who hears the evidence. The belief that a fact finder's only duty is to decide who is truthful and who is not, misses the essence of the role of a judge or jury.

We do not imply that all testimony must be heard "live." In some cases necessity dictates a different approach. *See, e.g.,* Rule 19.5, Arizona Rules of Criminal Proce-

dure, Death, Illness or Other Incapacity of Judge; A.R.S. § 13–703(B). Here the record provides no compelling circumstance why three judges must hear only part of the testimony.

We also do not insist rules governing hearsay be changed. Hearsay, including medical reports and the like, is certainly admissible under the appropriate evidentiary rule and does not have to be heard "live." Finally, parties may stipulate to evidence which may be read by the trier of fact.

A reviewing court defers to the lower court's assessment of evidence because that court saw witnesses, heard evidence and the manner in which it was given, and weighed that evidence before reaching a decision. One cannot say what portion of a witness's testimony is more sincere than not; more truthful than not; more plausible than not; more "weighty" than that of another like witness without hearing and observing the testimony. Such a procedure may not be administratively efficient or economical. Substantial justice has never been so.

Therefore, to the extent that either party exercises its right to produce live testimony, that testimony must be heard and evaluated by the same fact finder.

The award is set aside and remanded for further proceedings consistent with this opinion.

GORDON, C.J., FELDMAN, V.C.J., and MINKER and LIVERMORE, JJ., concur.

CAMERON, MOELLER and CORCORAN, JJ., did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, JOHN L. CLABORNE, Court of Appeals, Judge, Division One, JOSEPH M. LIVERMORE, Court of Appeals, Judge, Division Two, and ALLEN G. MINKER, Greenlee County Superior Court, Judge, were designated to sit in their stead.