NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TAIJA L. HOLT, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

INTEGRITY STAFFING, *Respondent Employer*,

ZURICH AMERICAN INSURANCE COMPANY, *Respondent Carrier*.

No. 1 CA-IC 19-0029
FILED 3-17-2020

Special Action - Industrial Commission
ICA Claim No. 20180-580204
Carrier Claim No. 001627-125489-WC-01
Marceline A. Lavelle, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Taija L. Holt, Glendale
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Lundmark Barberich La Mont & Slavin, P.C., Phoenix
By Kirk A. Barberich, Danielle S. Vukonich
*Counsel for Respondent Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**G A S S**, Judge:

**¶1**        Petitioner Taija Holt (Holt) appeals from an Industrial Commission of Arizona (ICA) award closing her worker's compensation claim as stationary with no permanent impairment. The award is based on an oral stipulation between Holt, Employer Integrity Staffing (Integrity), and Carrier Zurich American Insurance Company (Zurich). Holt argues the stipulation is invalid because she never signed it. This court affirms the administrative law judge (ALJ), concluding the record supports the ALJ's finding the parties reached a dispositive binding stipulation.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2**        In February 2018, Holt was employed by Integrity and assigned to work at an Amazon warehouse. She injured her back in the course and scope of this work. An on-site physician immediately evaluated and provided her with conservative care. A second physician later evaluated Holt. The second physician diagnosed Holt with a lower back strain. The doctor prescribed additional conservative care consisting of pain medications, muscle relaxers, hot and cold packs, and a back brace. The second physician imposed no work restrictions but referred Holt for physical therapy three times per week for two weeks.

**¶3**        On March 12, 2018, Zurich accepted Holt's claim but denied temporary disability benefits because Holt had not lost more than seven days of work. In May 2018, Dr. Gary Dilla performed an independent medical examination (IME) of Holt. Dr. Dilla concluded the only industrial injury Holt suffered was a soft tissue lumbar strain which was completely healed and was medically stationary. Dr. Dilla also concluded Holt's injury did not result in any permanent impairment. Dr. Dilla did not recommend any work restrictions and said Holt did not require any active medical treatment or supportive care. Based on Dr. Dilla's report, Zurich closed the

2

claim as of May 22, 2018, with no permanent disability or continuing benefits.

¶4    From February to June 2018, Holt continued to complain about her back pain, continued going to physical therapy, and saw several doctors. She also complained about pain and numbness in her right leg. She testified the pain in her leg caused her to fall and break some of her toes on her furniture.

¶5    In June 2018, Holt retained an attorney and filed a request for a hearing as to the closure of her case, claiming she was not medically stationary. Holt testified on September 20, 2018. The ALJ scheduled Dr. Dilla's testimony for January 2019.

¶6    In October 2018, Holt and her counsel orally agreed to have Dr. Terry McLean perform a "neutral" IME, and to abide by his findings as to the need for active medical treatment and as to permanent impairment related to the industrial injury. The IME was scheduled for late November. Holt's attorney was unable to notify her of the appointment because her unstable housing situation caused her to change addresses multiple times during this period. Her attorney noted at the time Holt was single with four children, "no steady address," no phone, and "rare use of the internet."

¶7    Counsel for both sides agreed to schedule a second appointment with Dr. McLean for late January 2019. Holt attended the appointment. After the examination, Dr. McLean concluded to the extent Holt had any ongoing complaints, they were unrelated to the February 2018 industrial injury. Dr. McLean determined the lumbar strain Holt experienced in the industrial injury resolved with neither permanent impairment nor work restrictions.

¶8    The parties attempted to reduce the stipulation to writing. Holt refused to sign any paperwork. Holt later said she would not comply with the agreed-upon stipulation. She testified that after her attorney failed to inform her of the late November IME, she lost trust in him. Her attorney formally withdrew from the representation on February 19, 2019, citing "professional differences." Since then Holt has represented herself.

¶9    Zurich filed a Motion To Enforce Settlement Agreement. Zurich argued the parties agreed to resolve the case by stipulating to the results of Dr. McLean's examination, Holt was bound by those results, and the ALJ should affirm the closure of the claim.

¶10        After taking testimony from Holt on April 15, 2019, the ALJ found Holt admitted she and the other parties agreed to be bound by Dr. McLean's opinions. The ALJ found the parties' oral stipulation was an agreement "to abide by [Dr. McLean's] opinions and recommendations regarding the status of [Holt's] industrial injury." Because the oral agreement was a valid stipulation, the ALJ found Holt did not have to sign the stipulation for it to be enforceable. The ALJ, therefore, granted Zurich's motion and issued an award concluding Holt's "continuing benefits issue is resolved in accordance [with the oral stipulation]."[1] Holt requested review, and the ALJ summarily affirmed the award.

¶11        This court has jurisdiction to review an award of the ICA under A.R.S. § 23-951(B).

## DISCUSSION

¶12        On appeal from the ICA, this court "defer[s] to the ALJ's determination of disputed facts but review[s] questions of law *de novo.*" *Tapia v. Indus. Comm'n*, 245 Ariz. 258, 260, ¶ 5 (App. 2018) (italics added). A claimant bears the burden to establish a medical condition is causally related to the industrial accident and the condition is either not medically stationary or is stationary but resulted in permanent impairment. *Spears v. Indus. Comm'n*, 20 Ariz. App. 406, 407 (1973) (citation omitted).

¶13        Holt stresses she never signed a written stipulation, implying the ALJ should not have enforced the oral stipulation. This appeal, therefore, focuses on the ALJ's conclusion the stipulation was enforceable without Holt's signature.

¶14        The ICA rules provide for binding oral stipulations of facts or issues by the parties. *See* A.A.C. R20-5-152(B). The ALJ relied on this rule and *Tabler v. Indus. Comm'n*, 202 Ariz. 518 (App. 2002), to conclude the oral stipulation was enforceable against Holt. In *Tabler*, the parties orally agreed to a settlement of the claim as non-compensable for $55,000. *Id*. at 520, ¶ 2. After the parties prepared the written agreement but before Tabler could sign it, he was killed in a car accident. *Id.* at ¶ 3. Because no rule or statute

---

[1]The ALJ did not make any findings of fact regarding Holt's condition based on Dr. McLean's report. This court suggests a better practice would have to been to include such findings in the final award. However, because both parties agreed to be bound by Dr. McLean's findings and opinions, those findings and opinions are uncontested and incorporated by implication into the award.

required worker's compensation settlement agreements be in writing, this court applied contract principles (evidence of offer, acceptance, and consideration) to the oral agreement to determine whether it was enforceable. *Id*. at 520-21, ¶¶ 6, 8.

¶15　　*Tabler* held when the parties to an oral agreement contemplate later putting it in writing, the ALJ must determine whether the parties intended the written document to be a mere memorialization of an already binding agreement or whether they intended to be bound only upon execution of the written document. *Id*. at 521, ¶ 11. Unlike this case, which concerns a stipulation of dispositive facts, *Tabler* concerned a full and final settlement of the claim. *Tabler*'s analysis still applies despite the distinction.

¶16　　Here, the ALJ found the initial oral stipulation was binding on the parties because Holt intended to be bound by the stipulation regardless of whether the parties reduced it to writing. This finding was based on Holt's unequivocal testimony at the hearing in which she said she intended to be bound by Dr. McLean's opinion when she initially agreed to his evaluation, and on Holt's participation in the evaluation pursuant to the stipulation. This evidence sufficiently supports the ALJ's conclusion to bind the parties based on the oral stipulation.

## CONCLUSION

¶17　　This court's review of the record reveals sufficient evidence supported the ALJ's conclusion regarding the binding nature of the oral stipulation. Accordingly, this court affirms the ALJ's award.



AMY M. WOOD • Clerk of the Court
FILED:　AA